**FILED**

DEC 1 5 2006

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| **MARÍA de Jesús BALTIERRA, M.D.** <br> 127 So FAIRFAX #121 <br> OLD Twn Alexandra VA 22314 <br> **Plaintiff,** <br> 202-286-6001 (cell) <br><br> vs. <br><br> **UNITED STATES DEPARTMENT OF STATE; AND DOES 1-50** <br><br> **Defendant(s).** | ) <br> ) <br> ) <br> ) <br> ) <br> ) Civil Action No.: _____ <br> ) <br> ) CASE NUMBER  1:06CV02148 <br> ) <br> ) JUDGE: Richard W. Roberts <br> ) <br> ) DECK TYPE: Pro se General Civil <br> ) <br> ) DATE STAMP: 12/18/2006 <br> ) <br> ) |

### COMPLAINT

María de Jesús Baltierra, M.D. (hereinafter "BALTIERRA") alleges causes of action against Defendant(s) as follows:

### FIRST CAUSE OF ACTION

### (Violation and Deprivation of Equal Protection Rights)

1.      Defendants: United States Department of State ("hereinafter "STATE DEPT."), its respective staff, agents, representatives and/or representatives of affiliate agencies, individually and in their official capacities, including staff and/or employees of the U.S. Passport Agency in Washington, D.C. Office; and DOES 1-50 have knowingly violated and deprived BALTIERRA of her constitutional equal protection rights guaranteed under the Fifth Amendment.

**RECEIVED**

DEC 1 3 2006

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

-1-

2.    BALTIERRA is ignorant of the true names and capacities of Defendants 1 through 50 inclusive, and therefore sues them by the foregoing fictitious names and is informed, believes and thereon alleges that each of said Defendants is responsible for the acts and conduct referred to herein. BALTIERRA reserves the right to amend this Complaint to name these Defendants once their identity becomes known.

3.    BALTIERRA is informed, believes and thereon alleges that each of the Defendants named herein, including DOES 1 through 50, are the staff, agents, representatives and/or representatives of affiliate agencies, individually and in their official capacities, acting jointly and severally, as such to be vicariously liable for the acts and conduct of each other.

4.    Defendant(s) have failed to issue a replacement U.S. Passport to BALTIERRA, a U.S. citizen, in violation of 22 U.S.C., Chapter 4, Section 211a – Authority to Grant, Issue and Verify Passports. Pursuant to 211a, "The Secretary of State may grant and issue passports, and cause passports to be granted, issued, and verified in foreign countries by diplomatic and consular officers of the United States."

5.    BALTIERRA became a naturalized citizen on or about November 8, 1968 in Los Angeles, California; Naturalization No. 9060364 – three is an additional though separate no. attached to it:    300151, as recorded by John Childers, Clerk of the District Court by S.C. Tony, Deputy Clerk.

6.    BALTIERRA, the eldest of seven children, was born in México City, México in 1950, and was thereafter raised and educated in Los Angeles, California from the age of four years.

7.    BALTIERRA applied for and was accepted to the University of California ("UCLA") in 1968.

8.    While at UCLA, BALTIERRA, distinguished herself academically and was honored by inclusion in the Dean's Honor List and the awarding of the *Rockefeller Scholarship* during her Freshman year (1968-69).

9.    BALTIERRA graduated from UCLA in 1972 with a degree in Spanish Literature.

10.    BALTIERRA applied for and was accepted to the UCLA Graduate School of Education in 1972, receiving her California K-12 Lifetime Teaching Credential in 1973.

11.    BALTIERRA gained acceptance at the University of Minnesota Medical School (hereinafter "U of M") and began her medical studies in 1974.

12.    BALTIERRA excelled in medical school, keeping an active agenda and remaining socially conscious.

13.    While in medical school, BALTIERRA was a member of the Board of Regents for the University of Minnesota and also sat and chaired numerous committees, including the Minority Admissions Committee.

14.    While at U of M, BALTIERRA and other *Chicana/o* and Native-

American students were subjected to deep-seeded hatred, scorn and ridicule from students and faculty because they were seen as intruders – taking away medical school slots from "qualified white" students.

15.    During orientation, the Dean of the medical school flatly stated: "Some of you do not belong in this medical school . . .," a reference to the Affirmative Action Program then in place.

16.    While at U of M, BALTIERRA distinguished herself again by earning ten (10) "Outstandings" in her medical school courses, despite having had to endure many severe financial setbacks.

17.    While in medical school, BALTIERRA chaired the Task Force on *Chicana/o* concerns, and also co-sponsored a Legislative Workshop on Capitol Hill dealing with minority issues in higher education.

18.    BALTIERRA's tireless community activism in support of the Hispanic population while in medical school earned her "Woman of the Year" recognition in the 1979 edition of the Minnesota Woman's Year Book, a U of M publication.

19.    BALTIERRA received her doctorate of medicine degree ("M.D.") from the U of M in 1981.

20.    On or about June 28, 2006 BALTIERRA applied in person at the Washington, D.C. Passport Agency, Special Issuance Department, for a replacement U.S. Passport.  She had a medical emergency in México that she

-4-

needed to attend to – a sick uncle.

21.    The application was denied by the Passport Agency for pretextual reasons. The staff at the Passport Agency would only tell BALTIERRA that she would be required to complete a "Supplemental Information" form not required of other U.S. Citizens, which violated her privacy rights because it asked for private and confidential information about her and her immediate family. The line of questions is similar in form and fashion to questions asked of foreign nationals applying for U.S. citizenship.

22.    The questions on the "Supplemental Information" form asked detailed questions about the names and addresses of all her siblings, the name and date of the church where she was baptized, and other such irrelevant questions that would never be asked of U.S. citizens.

23.    BALTIERRA responded to the "Supplemental Information" questions via FedEx with copy to Congressman Jim Moran's office in Alexandria, Virginia on or about July 2006. BALTIERRA contacted Congressman Moran's office because she felt her efforts at resolving this matter on her own were futile because the Passport Agency staff/personnel were ignoring her inquiries. Congressman Moran's office served as a liaison in this matter over the summer.

24.    The U.S. Passport Agency staff would neither acknowledge the completed "Supplemental Information" form nor respond to her inquires about the status of her application for the replacement U.S. Passport. BALTIERRA's

-5-

inquiries included a request to obtain copies of her passport record.

25.    Instead, the U.S. Passport Agency would only issue blanket statements that BALTIERRA had refused to cooperate and that they were still waiting for her supplemental responses.

26.    The Passport Agency did issue a brief statement by way of a notice sent to Congressman Moran's office dated June 30, 2006. On page one of that unsigned letter the Passport Agency acknowledges that BALTIERRA had held U.S. Passports in the past and even cited her previous passport numbers.

27.    The unsigned letter attempts to rationalize the request for additional information on the pretext of alleged fraudulent use or disposition of the passports. They state: "[W]e will require that you submit an additional signed and notarized statement concerning the disposition of the above listed passports. You must state that you have not in anyway [*sic*] loaned or conveyed the above listed passports to anyone and that you will not attempt to travel on these passports if they are recovered."

28.    On Thursday, December 7, 2006, nearly six (6) months after having applied for her replacement passport in June 2006, and after six (6) months of foot dragging on the part of the U.S. Passport Agency, BALTIERRA applied for and, again, paid the requisite filing fee ($157) for expedited processing of her replacement U.S. Passport. She was told by the U.S. Passport Agency staff to return the next day on Friday, December 8, 2006.

-6-

29.    When BALTIERRA returned the following afternoon she was again told her replacement passport would not be issued and that she would be required to complete a "Supplemental Information" form identical in all respects to the one previously submitted in July 2006. When BALTIERRA demanded to speak to the regional supervisor, a young woman appeared at the window accompanied by three (3) other unknown and un-identified staff/personnel.

30.    One of these individuals, after demanding his name and title numerous times, finally responded that he was from "Diplomatic Security," but would not give his name, despite repeated requests to identify himself.

31.    This un-identified individual from "Diplomatic Security" would only say that he had some questions of BALTIERRA because the "lost" U.S. Passport was still valid and that he was worried about it.

32.    When asked if he always questioned individuals applying for a replacement passport, he indicated in the affirmative.

33.    BALTIERRA knows for a fact that that blanket statement by this individual from "Diplomatic Security" was false and intentionally misleading because just the day before, on Thursday, she met an individual at the same passport office who was applying for a replacement passport because he had lost his previous passport (in fact, he had lost a total of about three passports over the years). He picked up his replacement passport without incident or delay.

34.    As a result of the above conspiratorial actions, and in conjunction

with the totality of actions against BALTIERRA by Defendant(s), BALTIERRA has been deprived of her Fifth Amendment Equal Protection rights.

## SECOND CAUSE OF ACTION

### (Violation and Deprivation of Due Process Rights)

35.    Plaintiff incorporates by reference each and every allegation of paragraphs 1 through 34 as though fully set forth herein.

36.    Defendants:    STATE    DEPT.,    its    respective    staff,    agents, representatives and/or representatives of affiliate agencies, individually and in their official capacities, including staff and/or employees of the U.S. Passport Agency in Washington, D.C. Office; and DOES 1-50 have knowingly violated and deprived BALTIERRA of her due process rights guaranteed under the Fourteenth Amendment.

37.    The U.S. Passport Agency has access to all necessary information on BALTIERRA to determine her identity.  Defendant has an overabundance of proof to determine that BALTIERRA is a U.S. citizen.  This information is readily available at the agency's fingertips.  As per the published passport policy information    page    on    the    U.S.    Passport    Agency    website    at: [http://www.travel.state.gov/passport/services/copies/copies/872_html], "Passport Services maintains United States passport records issued from 1925 to the present. These records normally consist of applications for United States passports and

-8-

supporting evidence of United States citizenship, and can be obtain upon request."

38.    BALTIERRA maintains that her proof of citizenship is the fact that she has been issued previous U.S. Passports based on her original submission of citizenship proof.

39.    BALTIERRA has requested a copy of her passport record on more than one occasion, however, she has been repeatedly told by Passport Agency staff that the information is confidential and cannot be released.

40.    The U.S. Passport Agency alleges to have mailed BALTIERRA an interview date with the Department of Homeland Security, but BALTIERRA contends she has never received any such notice or request. In fact, BALTIERRA only learned about that alleged "interview request/notice" through Senator Warner's office – who became involved in the matter in November 2006. However, no record of that alleged "notice" has ever been produced.

41.    The U.S. Passport Agency alleges that BALTIERRA has requested too many replacement passports, and that on that basis it will no longer issue a replacement passport, yet there is no basis for the allegation that BALTIERRA has used any of her passports for any other reason than for her own personal use and international travel.   In effect, BALTIERRA is being treated as a common criminal.

42.    BALTIERRA submitted all required information for issuance of a replacement passport.

43.    One of the requirements for a replacement passport to be issued is that the applicant complete form DS-64, entitled "Statement Regarding A Lost or Stolen Passport."

44.    For "Lost or Stolen Passports," the applicant is required to sign an affidavit attesting to the fact that the passport was indeed lost, and is further asked to describe the details if known.  BALTIERRA completed and signed form DS-64 under oath when applying for her replacement passport in June 2006, and again on Thursday, December 7, 2006 when she applied anew for her replacement passport.

45.    Form DS-64 does not make reference to any limitation on the number of times a replacement passport may be requested or issued on account of "loss," nor does any such limitation exist.

46.    In addition to form DS-64 (affidavit attesting to loss of passport), BALTIERRA completed and signed under oath form DS-11, entitled "Application For A U.S. Passport."

47.    The requirements listed for U.S. Passport applicants, are:  (1) Proof of U.S. Citizenship; (2) Proof of Identity; (3) Two recent color photographs; and (4) Fees [$157 for expedited service].

48.    Under "Proof of U.S. Citizenship," the Passport Agency will accept the following for naturalized citizens:  (1) Submit a previous U.S. Passport; (2) Certificate of Naturalization; (3) Certificate of Citizenship; -or- (4) Report of Birth Abroad.

-10-

COMPLAINT
BALTIERRA v. UNITED STATES DEPARTMENT OF STATE, et al.

49.    BALTIERRA completed and signed under oath form DS-11, entitled "Application For A U.S. Passport," submitting with it a photocopy of her previous "lost" U.S. Passport, and two (2) valid state-issued identifications as proof of identify in support of the proof of citizenship requirement.

50.    The U.S. Passport Agency has at its disposal digitalized information – demographic, birth, citizenship records and photographs – at its disposal, as by its own admission on the passport policy information website page cited above.

51.    The U.S. Passport Agency is at a loss for providing a valid, compelling reason for its refusal to issue the replacement passport.

52.    BALTIERRA is informed, believes, and thereon alleges that Defendants are attempting to cloud BALTIERRA's citizenship status as pretext for an otherwise unlawful attempt to obtain private and confidential information on naturalized citizens for compilation into a secret Homeland Security databank similar to the illegal information gathering conspiracy uncovered this past summer.

53.    Since BALTIERRA is a naturalized U.S. citizen, she would fall into that class of individuals who would apply for U.S. Passports, and therefore subject to the Dept. of Homeland Security's unlawful intelligence gathering techniques.

54.    Defendants are aware and have sufficient proof that BALTIERRA is a U.S. citizen and that she is who she claims to be, yet they continue to refuse to issue her replacement passport on pretextual grounds.

55.    If Defendants have a substantive reason why the passport should not

-11-

be issued, they have not stated it nor cited an applicable law supporting their behavior and refusal to issue the replacement passport, and yet they refuse to acknowledge receipt of BALTIERRA's previously-submitted "Supplemental Information" form.

56.    The facts support the contention that BALTIERRA has been denied her right to a U.S. Passport without an adequate opportunity to be heard or to contest the as yet unknown legal basis for the denial, in violation of her due process rights.

57.    BALTIERRA has received no notice of hearing, and contends no such notice will issue so long as Defendant continues its fishing expedition on naturalized citizens seeking replacement passports.

58.    BALTIERRA is a U.S. citizen, and has been for 38 years, yet the U.S. Passport Agency, an arm of the STATE DEPT. continues to treat BALTIERRA as though she were a foreign national, an alien and/or illegal immigrant, and continues to trample on her due process rights guaranteed under the U.S. Constitution.

59.    As a result of the above conspiratorial actions, and in conjunction with the totality of actions against BALTIERRA by Defendant(s), BALTIERRA has been deprived of her Fourteenth Amendment due process rights.

## THIRD CAUSE OF ACTION

-12-

## (Interference with Property Interest in U.S. Passport)

60.    Plaintiff incorporates by reference each and every allegation of paragraphs 1 through 59 as though fully set forth herein.

61.    Defendants: STATE DEPT. and its respective staff, agents, representatives and/or representatives of affiliate agencies, individually and in their official capacities, including staff and/or employees of the U.S. Passport Agency in Washington, D.C. Office; and DOES 1-50 have knowingly violated and deprived BALTIERRA of her property interest in her U.S. Passport.

62.    BALTIERRA is informed, believes, and thereon alleges that Defendants have no intention of issuing the replacement passport without first obtaining, illegally through coercion and under duress with the pretext of verifying her citizenship status, confidential and private information for compilation into a secret Homeland Security national databank.

63.    BALTIERRA contends she is a U.S. citizen, and that the U.S. Passport Agency is refusing to issue the passport on pretextual grounds having no basis in law.

64.    BALTIERRA is entitled to the issuance of her replacement U.S. Passport as a matter of law – she has submitted the requisite fees and documentation (including two state-issued pieces of identification and a photocopy of her "lost" passport showing her image and passport number).

65.    The refusal to issue the replacement passport is not only creating

great hardship, but is in violation of BALTIERRA's constitutional rights.

66.    BALTIERRA has become a prisoner in her own country – unable to travel because the STATE DEPT. is refusing, illegally and without merit, to issue a replacement passport.

67.    BALTIERRA is entitled to a U.S. Passport, as is her right as a U.S. citizen.

68.    BALTIERRA is informed, believes, and thereon alleges that the STATE DEPT. will not issue her replacement passport unless ordered to do so by a court of law.

## FOURTH CAUSE OF ACTION

### (Declaratory Relief)

69.    Plaintiff incorporates by reference each and every allegation of paragraphs 1 through 68 inclusive of the as though set forth in full herein.

70.    BALTIERRA is entitled to declaratory relief to insure that her Constitutional rights are not further trampled on by Defendant(s).

71.    Defendants are not entitled to absolute immunity when they have knowingly and viciously acted in bad faith with intent to discredit and damage BALTIERRA's good name and reputation by denying her application for a replacement U.S. Passport, thus casting a cloud over her credibility and legal status in the United States, despite there being an overabundance of proof in the Passport

-14-

COMPLAINT
BALTIERRA v. UNITED STATES DEPARTMENT OF STATE, et al.

Agency's databanks to prove that BALTIERRA is who she says she is and that she is a U.S. citizen.

72.    That unless each and every Defendant, individually and in their official capacity, is held accountable for their negligent and unforeseen bad faith actions, they will continue to violate other naturalized citizens' constitutional rights and their right to obtain a U.S. Passport.

73.    Defendants, each and every one of them, through their past and present actions, continue to violate BALTIERRA's equal protection rights, due process rights.

74.    Defendants' activities and behavior constitutes an interference with BALTIERRA's property interest in her U.S. Passport.

75.    That in the process of unlawfully refusing to issue the replacement passport, Defendants, through their agents and legal advisors, have communicated confidential information about BALTIERRA to unauthorized third parties, since such information is not privileged if made in bad faith.

76.    BALTIERRA is entitled not only to full and immediate issuance of her replacement U.S. Passport, but also to have the record cleared and to have any and all defamatory information now contained within the U.S. Passport or other sister and/or affiliated agency databanks.

77.    BALTIERRA has committed no crime and has complied totally and completely with the requirements, and thus is entitled to the immediate issuance of

her replacement passport.

## FIFTH CAUSE OF ACTION

### (Damages)

78.     Plaintiff incorporates by reference each and every allegation of paragraphs 1 through 77 inclusive of the as though set forth in full herein.

79.     Defendants, each and every one of them, individually and in their official capacity, have taken it upon themselves to purposely, maliciously and arrogantly weave fictitious misrepresentations of fact into gospel and uncontested truth.

80.     BALTIERRA has twice paid the U.S. Passport expedited application fee and has twice been denied, without legal justification and without an opportunity for hearing or to rebut the allegations or reasons for not issuing the replacement passport.

81.     BALTIERRA, at the very least, is entitled to a full and complete refund of her two applications fees because the passport applications were maliciously flagged and negligently processed and/or processed with ill motives in an attempt to obtain confidential and private information under pretext of verifying her citizenship status.

82.     BALTIERRA has been suffered defamation through improper and unjustified allegations of wrongdoing, and has also suffered economic loss at

-16-

having to pay the replacement application fee that has not resulted in the proper disposition of her two passport applications.

83.    BALTIERRA had planned to travel to Europe with her elderly 81-year-old mother this month, but her efforts have been thwarted by Defendants' refusal to issue the replacement passport. The travel arrangements and flight tickets have been made and paid for, and will be forfeited if not used. The total amount of these monetary damages will be presented at trial.

**WHEREFORE,** Plaintiff prays for judgment against the Defendants, and each of them, as follows:

**ON PLAINTIFF'S FIRST CAUSE OF ACTION** (violation and deprivation of equal rights)

1.    General, compensatory and economic damages, according to proof at the time of trial;

2.    Punitive damages against Defendant for its flagrant, negligent and malicious failure to comply with state and federal equal rights protections;

3.    Costs of suit; and

4.    For such other and further relief as this Court deems just and proper.

**ON PLAINTIFF'S SECOND CAUSE OF ACTION** (violation and deprivation of due process rights)

1.    General, compensatory and economic damages, according to proof at the time of trial;

2.    Punitive damages against Defendant for its flagrant, negligent and malicious failure to comply with state and federal due process protections;

3.    Costs of suit; and

4.    For such other and further relief as this Court deems just and proper.

**ON PLAINTIFF'S THIRD CAUSE OF ACTION** (interference with property interest in U.S. Passport)

1.    **DECLARATORY RELIEF** in the form of a judicial determination that Defendants have violated BALTIERRA's equal protection and due process rights, as well as BALTIERRA's property interest in her U.S. Passport. Such judicial determination is proper because of the nature of the constitutional rights violations and the failure of Defendant(s) to provide an opportunity to be heard.

2.    **ENJOIN** the STATE DEPT., through the U.S. Passport Agency, from continuing to demand, under color of law, that BALTIERRA divulge confidential and private information unrelated to her replacement passport application;

3.     **ORDER** the STATE DEPT., through the U.S. Passport Agency, to immediately issue the replacement U.S. Passport, as proof of U.S. citizenship is readily available and within their means to determine through highly detailed information contained within the U.S. Passport Agency databank files;

4.     **ORDER** the Defendants, through Subpoena *duces tecum*, to produce records of BALTIERRA's passport record, which will prove that she is a U.S. citizen and has previously been issued U.S. passports without incident;

5.     General, compensatory and economic damages, according to proof at the time of trial;

6.     Punitive damages against Defendant for its flagrant, negligent and malicious violation of Plaintiff's property interest in her U.S. Passport;

7.     Costs of suit; and

8.     For such other and further relief as this Court deems just and proper.


**ON PLAINTIFF'S FOURTH CAUSE OF ACTION** (declaratory relief)

1.     **DECLARATORY RELIEF** in the form of a judicial determination that Defendants have violated BALTIERRA's equal protection and due process rights, as well as BALTIERRA's property interest in her U.S. Passport. Such judicial determination is proper because of the nature of the constitutional rights violations and the failure of Defendant(s) to provide an opportunity to be heard;

-19-

2.    **ENJOIN** the STATE DEPT., through the U.S. Passport Agency, from continuing to demand, under color of law, that BALTIERRA divulge confidential and private information unrelated to her replacement passport application;

3.    **ORDER** the STATE DEPT., through the U.S. Passport Agency, to immediately issue the replacement U.S. Passport, as proof of U.S. citizenship is readily available and within their means to determine through highly detailed information contained within the U.S. Passport Agency databank files;

4.    **ORDER** the Defendants, through Subpoena *duces tecum*, to produce records of BALTIERRA's passport record, which will prove that she is a U.S. citizen and has previously been issued U.S. passports without incident;

5.    General, compensatory and economic damages, according to proof at the time of trial;

6.    Punitive damages against Defendant for its flagrant, negligent and malicious violation of Plaintiff's right to obtain a replacement U.S. Passport.

7.    Costs of suit; and

8.    For such other and further relief as this Court deems just and proper.

COMPLAINT
BALTIERRA v. UNITED STATES DEPARTMENT OF STATE, *et al.*

**ON PLAINTIFF'S FIFTH CAUSE OF ACTION** (damages)

1.    General, compensatory and economic damages, according to proof at the time of trial;

2.    Punitive damages against Defendant for its flagrant, negligent and malicious violation of Plaintiff's right to obtain a replacement U.S. Passport;

3.    Costs of suit; and

4.    For such other and further relief as this Court deems just and proper.


Dated:    _____December 11, 2006_____    _____

MARÍA de Jesús BALTIERRA, M.D.
Plaintiff, In *Propria persona*
127 S. Fairfax Street, #121
Alexandria, Virginia  22314
T:  202.531.3939
F:  703.782.0382

## **VERIFICATION**

I, MARÍA de Jesús BALTIERRA, M.D., am the Plaintiff in the above-entitled proceeding. I have read the foregoing Complaint and know the contents thereof. The same is true of my own knowledge, except as to those matters, which are stated upon information and/or belief, and as to those matters I believe them to be true.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge. Executed at Alexandria, Virginia on December 11, 2006.

Dated:    December 11, 2006

MARÍA de Jesús BALTIERRA, M.D.
Plaintiff, In *Propria persona*

RWR

**CIVIL COVER SHEET**

JS-44
(Rev.1/05 DC)

## I (a) PLAINTIFFS

*Maria de Jesus Baltierra*

(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF  88888
(EXCEPT IN U.S. PLAINTIFF CASES)

PRO SE   NP

## DEFENDANTS

*U.S. Department of State, et al.,*

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT _____
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
TRACT OF LAND INVOLVED

(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

ATTORNEYS (IF KNOWN)

CASE NUMBER   1:06CV02148

JUDGE: Richard W. Roberts

DECK TYPE: Pro se General Civil

DATE STAMP: 12/18/2006

## II. BASIS OF JURISDICTION

(PLACE AN x IN ONE BOX ONLY)

☐ 1 U.S. Government
　　Plaintiff

☐ 3 Federal Question
　　(U.S. Government Not a Party)

☒ 2 U.S. Government
　　Defendant

☐ 4 Diversity
　　(Indicate Citizenship of Parties
　　in item III)

## III CITIZENSHIP OF PRINCIPAL PARTIES

FOR PLAINTIFF

| | PTF | DFT | | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. CASE ASSIGNMENT AND NATURE OF SUIT

(Place a X in one category, A-N, that best represents your cause of action and one in a corresponding Nature of Suit)

### ☐ A. Antitrust

☐ 410 Antitrust

### ☐ B. Personal Injury/ Malpractice

☐ 310 Airplane
☐ 315 Airplane Product Liability
☐ 320 Assault, Libel & Slander
☐ 330 Federal Employers Liability
☐ 340 Marine
☐ 345 Marine Product Liability
☐ 350 Motor Vehicle
☐ 355 Motor Vehicle Product Liability
☐ 360 Other Personal Injury
☐ 362 Medical Malpractice
☐ 365 Product Liability
☐ 368 Asbestos Product Liability

### ☐ C. Administrative Agency Review

☐ 151 Medicare Act

**Social Security:**
☐ 861 HIA ((1395ff)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405(g)
☐ 864 SSID Title XVI
☐ 865 RSI (405(g)

**Other Statutes**
☐ 891 Agricultural Acts
☐ 892 Economic Stabilization Act
☐ 893 Environmental Matters
☐ 894 Energy Allocation Act
☐ 890 Other Statutory Actions (If Administrative Agency is Involved)

### ☒ D. Temporary Restraining Order/Preliminary Injunction

Any nature of suit from any category may be selected for this category of case assignment.

*(If Antitrust, then A governs)*

## ☐ E. General Civil (Other) OR ☐ F. Pro Se General Civil

**Real Property**
☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent, Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

**Personal Property**
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

**Bankruptcy**
☐ 422 Appeal 28 USC 158
☐ 423 Withdrawal 28 USC 157

**Prisoner Petitions**
☐ 535 Death Penalty
☐ 540 Mandamus & Other
☐ 550 Civil Rights
☐ 555 Prison Condition

**Property Rights**
☐ 820 Copyrights
☐ 830 Patent
☐ 840 Trademark

**Federal Tax Suits**
☐ 870 Taxes (US plaintiff or defendant
☐ 871 IRS-Third Party 26 USC 7609

**Forfeiture/Penalty**
☐ 610 Agriculture
☐ 620 Other Food &Drug
☐ 625 Drug Related Seizure of Property 21 USC 881
☐ 630 Liquor Laws
☐ 640 RR & Truck
☐ 650 Airline Regs
☐ 660 Occupational Safety/Health
☐ 690 Other

**Other Statutes**
☐ 400 State Reapportionment
☐ 430 Banks & Banking
☐ 450 Commerce/ICC Rates/etc.
☐ 460 Deportation

☐ 470 Racketeer Influenced & Corrupt Organizations
☐ 480 Consumer Credit
☐ 490 Cable/Satellite TV
☐ 810 Selective Service
☐ 850 Securities/Commodities/ Exchange
☐ 875 Customer Challenge 12 USC 3410
☐ 900 Appeal of fee determination under equal access to Justice
☐ 950 Constitutionality of State Statutes
☐ 890 Other Statutory Actions (if not administrative agency review or Privacy Act

5

| ☐ **G.** *Habeas Corpus/ 2255* | ☐ **H.** *Employment Discrimination* | ☐ **I.** *FOIA/PRIVACY ACT* | ☐ **J.** *Student Loan* |
|---|---|---|---|
| ☐ 530 Habeas Corpus-General<br>☐ 510 Motion/Vacate Sentence | ☐ 442 Civil Rights-Employment<br>(criteria: race, gender/sex,<br>national origin,<br>discrimination, disability<br>age, religion, retaliation)<br><br>*(If pro se, select this deck)* | ☐ 895 Freedom of Information Act<br>☐ 890 Other Statutory Actions<br>(if Privacy Act)<br><br><br>*(If pro se, select this deck)* | ☐ 152 Recovery of Defaulted Student<br>Loans (excluding veterans) |

| ☐ **K.** *Labor/ERISA (non-employment)* | ☐ **L.** *Other Civil Rights (non-employment)* | ☐ **M.** *Contract* | ☐ **N.** *Three-Judge Court* |
|---|---|---|---|
| ☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt. Reporting &<br>Disclosure Act<br>☐ 740 Labor Railway Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | ☐ 441 Voting (if not Voting Rights<br>Act)<br>☐ 443 Housing/Accommodations<br>☐ 444 Welfare<br>☒ 440 Other Civil Rights<br>☐ 445 American w/Disabilities-<br>Employment<br>☐ 446 Americans w/Disabilities-<br>Other | ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment &<br>Enforcement of Judgment<br>☐ 153 Recovery of Overpayment of<br>Veteran's Benefits<br>☐ 160 Stockholder's Suits<br>☐ 190 Other Contracts<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | ☐ 441 Civil Rights-Voting (if Voting<br>Rights Act) |

**V. ORIGIN**

☒1 Original
Proceeding
☐ 2 Removed
from State
Court
☐ 3 Remanded from
Appellate Court
☐ 4 Reinstated
or Reopened
☐ 5 Transferred from
another district
(specify)
☐ Multi district
Litigation
☐ 7 Appeal to
District Judge
from Mag.
Judge

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)

42 USC 1983

**VII. REQUESTED IN COMPLAINT**  CHECK IF THIS IS A CLASS  **DEMAND $**  Check YES only if demanded in complaint
☐  ACTION UNDER F.R.C.P. 23  0  **JURY DEMAND:** ☐ YES  ☒ NO

**VIII. RELATED CASE(S) IF ANY**  (See instruction)  ☐ YES  ☒ NO  If yes, please complete related case form.

**DATE**  **SIGNATURE OF ATTORNEY OF RECORD**  NCD

## INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44
### Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I.  COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT  (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III.  CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed <u>only</u> if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV.  CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the <u>primary</u> cause of action found in your complaint. You may select only <u>one</u> category. You <u>must</u> also select <u>one</u> corresponding nature of suit found under the category of case.

VI.  CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII.  RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.