# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

_____
)
MARIA de Jesus BALTIERRA,                )
                                                        )
    Plaintiff                                  )
                                                        )
                                                        )  Civil Action No. 06-2148 (RWR)
        v.                                   )
                                                        )
U.S. DEPARTMENT OF STATE           )
AND DOES 1-50                                )
                                                        )
    Defendants.                            )
_____)

## DEFENDANTS' MOTION TO DISMISS

Defendants, United States Department of State and DOES 1-50, by and through undersigned counsel, hereby respectfully move, pursuant to Fed. R. Civ. P. 12(b)(1), (5), and (6), for dismissal of this action for lack of subject matter jurisdiction, insufficiency of service, and failure to state a claim upon which relief may be granted.

_Pro se_ plaintiff is hereby advised that failure to respond to a dispositive motion may result in the district court granting the motion and dismissing the case.  See Fox v. Strickland, 837 F.3d 507, 509 (D.C. Cir. 1988).[1]

In support of this motion, the Court is respectfully referred to the accompanying Memorandum of Points and Authorities and to the entire record in this case.  A proposed Order consistent with the relief sought herein is attached.

---

[1]It is not entirely clear whether or not the Plaintiff is proceeding pro se or is represented by "Daniel Moreno," who has filed and signed some of the pleadings submitted to the court.

Respectfully submitted,

_____/s/_____
JEFFREY A. TAYLOR, D.C. BAR # 498610
United States Attorney

_____/s/_____
RUDOLPH CONTRERAS, D.C. BAR # 434122
Assistant United States Attorney

_____/s/_____
QUAN K. LUONG
Special Assistant United States Attorney
555 Fourth Street, N.W., Room E-4417
Washington, D.C. 20530
(202) 514-9150 (telephone)
(202) 514-8780 (facsimile)

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____
                                          )
MARIA de Jesus BALTIERRA,                 )
                                          )
        Plaintiff                         )
                                          )
                                          ) Civil Action No. 06-2148 (RWR)
        v.                                )
                                          )
U.S. DEPARTMENT OF STATE                  )
AND DOES 1-50                             )
                                          )
        Defendants.                       )
_____)

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**
**OF DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

**INTRODUCTION**

Plaintiff Maria de Jesus Baltierra, M.D. brings this action challenging the United States

Passport Agency's ("Agency") refusal to issue her a replacement United States passport

("Baltierra II"). Plaintiff alleges that the Agency's actions violated the Fifth Amendment's equal

protection clause and the Fourteenth Amendment's due process clause and also interfered with

her property interests in a passport. Plaintiff seeks injunctive relief regarding the issuance of her

passport and production of her passport records, unspecified compensatory damages and punitive

damages, costs, and such other relief as the court deems just and proper. Plaintiff's instant

complaint is underline identical to a complaint previously filed by the Plaintiff in the United States District

Court for the Eastern District of Virginia on December 11, 2006 ("Baltierra I"), which was

dismissed for failure to state a claim. *Attachment 1.* As discussed more fully below, this instant

complaint should be dismissed for lack of subject matter jurisdiction and failure to state a claim.

Specifically, Plaintiff's complaint is barred by the doctrines of res judicata or collateral estoppel,

sovereign immunity, and mootness.

## BACKGROUND

Plaintiff is a United States citizen, who was naturalized on or around November 8, 1968. *Compl. at ¶ 5.* On or around June 28, 2006, Plaintiff applied for a replacement passport at the United States Passport Agency, Special Issuance Agency ("SIA"). *Compl. at ¶ 20.* Plaintiff was asked to complete a supplemental identification questionnaire and provide certain historical biographical documentation. *Compl. at ¶ 21-25.* Plaintiff refused to complete this questionnaire, arguing that many of these questions were irrelevant. *Compl. at ¶ 21*; *Attachment 2.*

On or around December 7, 2006, Plaintiff appeared at the Washington Passport Agency ("WPA") office and submitted another application for a replacement passport. *Compl. at ¶ 8.* On or around December 8, 2006, Plaintiff claims that she spoke with unnamed Passport office employees, who advised her that she was still required to submit the supplemental information that she had previously declined to provide. *Compl. at ¶ 29.* Plaintiff also claims that she spoke with an unidentified officer from "Diplomatic Security," who advised her that he had some questions because her lost passport was still valid. *Compl. at ¶¶ 30-31.* She claims that the previous day, she spoke with an unnamed individual who had obtained a replacement passport "without incident or delay." *Compl. at ¶ 33.*

On December 11, 2006, Plaintiff filed a complaint in the United States District Court for the Eastern District of Virginia. *Attachment 1.* In that complaint, Plaintiff alleged that the Agency's refusal to issue her a replacement passport constituted a violation of the Fifth and Fourteenth Amendments of the United States Constitution. Among other things, Plaintiff alleged that she had submitted the standard paperwork for a replacement passport and that the Agency

2

was "attempting to cloud [her] citizenship status as pretext for an otherwise unlawful attempt to obtain private and confidential information on naturalized citizens for compilation into a secret Homeland Security databank. . ." *Attachment 1 at ¶ 52.* Plaintiff also claimed that she had "been denied her right to a U.S. Passport without an adequate opportunity to be heard or to contest the as yet unknown legal basis for the denial, in violation of her due process rights." *Attachment 1 at ¶ 56.* Plaintiff sought injunctive relief regarding the issuance of her passport and production of her passport records, unspecified compensatory damages and punitive damages, costs, and such other relief as the court deemed just and proper. *Attachment 1 at pg. 14-21.*

On December 13, 2006, the court dismissed Baltierra I for failure to state a claim. *Attachment 3.* First, the court found that the Plaintiff failed to exhaust her administrative remedies. *Attachment 3 at pg 5-7.* Noting that the "Department of State has a detailed administrative structure for challenging denials of passport applications," the court held that "it is clear that Dr. Baltierra has not exhausted her administrative remedies." *Id.* The court also found that Plaintiff failed to provide to the Passport office the requested information and noted that her "refusal to comply with the Agency's request for additional information does not bode well for her current legal challenge." *Id.* Second, the court held that even "had [Plaintiff] exhausted her administrative remedies, her due process and equal protection claim still fail to state a claim." *Attachment 3 at pg. 7.* Regarding her due process claim, the court noted that Plaintiff appeared to be alleging a "constitutional right to a replacement United States passport." *Id.* The court held that even "[a]ssuming such a right exists, [Plaintiff] has not demonstrated that the Agency denied her notice of the opportunity to be heard concerning her request for a replacement passport." *Id.* Regarding the equal protection claim, the court noted that Plaintiff did "not allege that she was

3

similarly situated to any other application or that she was treated differently than that person."

*Attachment 3 at pg. 8.*  Though the court acknowledged the Plaintiff's "claim that an unidentified

individual did not have to submit the same information she had to submit to obtain a replacement

passport," the court found that these "conclusory, anecdotal statements do[ ] not suggest that she

was treated differently than another similarly situated person." *Id*.  The court dismissed the

Plaintiff's complaint without prejudice and held that she "may pursue her claims ... after first

exhausting her administrative remedies." *Attachment 3 at pg. 11.*

On December 13, 2006, only two days after Baltierra I was dismissed, Plaintiff filed the

identical complaint ("Baltierra II") with this court.  Baltierra II sets forth the exact same parties,

allegations, causes of action, and requested relief.[2]

---

[2] On or around January 3, 2007, Plaintiff apparently filed with the court a rambling and
confusing document. *Docket Entry 5*.  The only thing clear about this pleading is that Plaintiff is
apparently seeking to add certain named individuals as defendants in this complaint. Id.  This
pleading was filed with the court before the Plaintiff's December 13, 2006 complaint was served
upon the United States Attorney's office in March, 2007 and it has never been served upon this
office as required by Fed. R. Civ. P. 4(i).  More importantly, however, none of the individual
defendants named in this pleading have ever been served with the complaint in accordance with
the rules applicable to individual defendants.  Simpkins v. District of Columbia Government, 108
F.3d 366, 369 (D.C. Cir. 1997).

It is well established that, in an action against a federal employee in his or her individual
capacity, the individually-sued defendant must be served with process in accordance with Rule
4(e) of the Federal Rules of Civil Procedure. Id.  Rule 4(e) provides that service is effectuated by
complying with the laws of the state in which the district court is located by delivering a copy of
the summons and complaint to the defendant (or his appointed agent) personally, or by leaving
copies thereof at the defendant's dwelling house or usual place of abode with some person of
suitable age and discretion who resides there. Fed. R. Civ. P. 4(e).  The SCR-Civil 4(e)(2)
allows for service upon individuals by first class, certified or registered mail.  Actual notice will
not, of course, substitute for technically proper service under Rule 4 and will not permit the
Court to render a personal judgment against an individually-sued defendant.  Sieg v. Karnes, 693
F.2d 803 (8th Cir. 1982); See also Stafford v. Briggs, 444 U.S. 527 (1980).

In this case, there is no indication that Plaintiff has served any of the individual

4

On April 27, 2007, the Agency issued a replacement passport to the Plaintiff.  It was sent to the Plaintiff via FedEx overnight delivery.  *Attachment 4*.

## DISCUSSION

Plaintiff has failed to set forth "a short and plain statement of the grounds upon which the court's jurisdiction depends. . ." as required by Fed. R. Civ. P. 8(a).  Based upon a reading of the complaint and for purposes of this motion, it will be presumed that Plaintiff is alleging 28 U.S.C. § 1331 federal question jurisdiction in (1) claiming constitutional *Bivens* torts against the Department of State and unnamed federal officers or (2) seeking injunctive relief under the Administrative Procedures Act ("APA"), 5 U.S.C. § 702.

**A.      Plaintiff is Barred by Res Judicata or Collateral Estoppel from Bringing this Complaint**

"The doctrine of res judicata prevents repetitious litigation involving the same causes of action or the same issues."  I.A.M. Nat'l Pension Fund v. Indus. Gear Mfg. Co., 723 F.2d 944, 946 (D.C.Cir. 1983).  Res judicata has two distinct aspects - claim preclusion and issue preclusion (commonly known as collateral estoppel) - that apply in different circumstances and with different consequences to the litigants.  NextWave Pers. Commc'ns, Inc. v. Fed. Commc'ns Comm'n, 254 F.3d 130, 142 (D.C.Cir. 2001) (citing id.); Novak v. World Bank, 703 F.2d 1305, 1309 (D.C.Cir. 1983). Under claim preclusion, "a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action."  Drake v. Fed. Aviation Admin., 291 F.3d 59, 66 (D.C.Cir. 2002) (quoting Allen

---

defendants.  *Docket Entry 5, Certificate of Service.*  Because the record in this action is devoid of any evidence of proper personal service upon the federal defendants in their individual capacities, this action cannot proceed against them individually and all claims against the defendants in their individual capacity should be dismissed.

v. McCurry, 449 U.S. 90, 94, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980)).  Under issue preclusion or collateral estoppel, "once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case."  Yamaha Corp. of Am. v. United States, 961 F.2d 245, 254 (D.C.Cir. 1992) (quoting Allen, 449 U.S. at 94, 101 S.Ct. 411).  In short, "claim preclusion forecloses all that which might have been litigated previously," while issue preclusion "prevents the relitigation of any issue that was raised and decided in a prior action."  I.A.M. Nat'l Pension Fund, 723 F.2d at 949; Novak, 703 F.2d at 1309.  In this way, res judicata helps "conserve judicial resources, avoid inconsistent results, engender respect for judgments of predictable and certain effect, and [ ] prevent serial forum-shopping and piecemeal litigation."  Hardison v. Alexander, 655 F.2d 1281, 1288 (D.C.Cir. 1981); see also Allen, 449 U.S. at 94, 101 S.Ct. 411.

Plaintiff's complaint is barred by either res judicata or collateral estoppel or both.  In this court, Plaintiff has filed the exact same complaint against the same parties that she filed in the Eastern District of Virginia, setting forth the same allegations and causes of action and requesting the same relief.  In that complaint, *Baltierra I*, a court of competent jurisdiction has already decided the following facts and issues:  (1) that the Plaintiff has not exhausted her administrative remedies with regards to her passport application; (2) that Plaintiff's allegations fail to state a Fifth Amendment claim; and (3) that Plaintiff's allegations fail to state a Fourteenth Amendment claim.  Admittedly, res judicata does not bar a plaintiff from refiling a claim that was dismissed without prejudice, see Semtek Int'l Inc. v. Lockheed Martin Corp., 531 U.S. 497, 505-06, 121 S.Ct. 1021, 149 L.Ed.2d 32 (2001) ( "The primary meaning of 'dismissal without prejudice,' we think, is dismissal without barring the plaintiff from returning later, to the same court, with the

same underlying claim."); Ciralsky v. CIA, 355 F.3d 661, 667 (D.C.Cir. 2004) ( "[A] dismissal without prejudice permits a new action (assuming the statute of limitations has not run) without regard to res judicata principles ...." (internal quotation marks omitted)), and the *Baltierra I* court specifically held that Plaintiff could refile her complaint once she had exhausted her administrative remedies. However, it does not appear that Plaintiff has in fact exhausted her administrative remedies. In fact, in light of the fact that *Baltierra II* was filed only two days after *Baltierra I*, it is reasonable to presume that she has not. Morever, even if Plaintiff alleges that she has exhausted her administrative remedies, Plaintiff has set forth in this court the exact same allegations in support of her Fifth and Fourteenth Amendment claims that the *Baltierra I* court has already determined fail to state a claim.

Plaintiff's actions represent the very type of repetitious litigation and forum shopping that the doctrines of res judicata and collateral estoppel are intended to prevent. Only two days after the Eastern District of Virginia dismissed *Baltierra I* for failure to exhaust administrative remedies and failure to state a Fifth or Fourteenth Amendment claim, rather than taking any steps to address or cure these deficiencies, Plaintiff simply sought out another forum and filed the exact same complaint. Given these circumstances, Plaintiff is not entitled to another bite at the apple and her complaint must be barred by either res judicata or collateral estoppel or both.

**B.    Sovereign Immunity Bars Any Constitutional Claims Against the Department of State and Any Individual Defendants In Their Official Capacities**

Plaintiff's complaint is also barred by the doctrine of sovereign immunity. To the extent that Plaintiff seeks damages for alleged constitutional violations against the Department of State, "its respective staff, agents, representatives and/or representatives of affiliate agencies," and any

individual defendants in their official capacities, her claims must be dismissed absent a waiver of sovereign immunity. Meyer v. Reno, 911 F. Supp. 11 (D.D.C. 1996); Marshall v. Reno, 915 F. Supp. 426 (D.D.C. 1996); Deutsch v. Dep't of Justice, 881 F. Supp. 49, 55 (D.D.C. 1995). The inherent sovereign immunity of the United States protects it and its agencies from suit absent express waiver. See United States v. Nordic Village, 503 U.S. 30 (1992). Sovereign immunity also bars suits for money damages against officials in their official capacities for nondiscretionary acts absent a specific waiver by the government. Clark v. Library of Congress, 750 F.2d 89, 101-02 (D.C. Cir. 1984). Plaintiff's complaint does not contain any colorable basis for such a waiver and must be dismissed for lack of subject matter jurisdiction.

To the extent the Plaintiff is seeking monetary damages against the defendants in their official capacities, the lawsuit must be construed as against the United States. Laury v. Greenfield, 87 F. Supp. 2d 1210, 1213 (D. Kansas 2000) (relying on Kentucky v. Graham, 473 U.S. 159 (1985)). The United States, however, has not waived its immunity from constitutional tort lawsuits. See Federal Deposit Insurance Corp. v. Meyer, 510 U.S. 471, 475 (1994); Deaf Smith County Grain Processors, Inc. v. Glickman, 162 F.3d 1206, 1210 (D.C. Cir. 1998). An action for damages based upon a Bivens theory can only be maintained against individual defendants and cannot be brought against the United States or an agency thereof. Meyer, 510 U.S. at 475. The only waiver exposing the United States to tort liability is the Federal Tort Claims Act (28 U.S.C. §§ 2671-2680), which does not apply to constitutional torts. Risley v. Hawk, 918 F. Supp. 18 (D.D.C. 1996).

A *Bivens* constitutional tort theory fails to state a claim against defendants in their official capacities. Plaintiff's allegations against the defendants in their official capacities must be

dismissed with prejudice.  The only claims which are permissible under a <u>Bivens</u> theory are those against defendants in their individual capacities.  Therefore, to the extent plaintiff asserts claims for damages against the Department of State as an agency or any defendants in their official capacities, such claims must be dismissed for lack of subject matter jurisdiction.

**C.      Plaintiff Fails to State a Cognizable Due Process or Equal Protection Claim**

Even assuming arguendo that this Court has jurisdiction over Plaintiff's complaint, Plaintiff still fails to state a claim regarding either her due process or equal protection claim.  As discussed in the *Baltierra I* opinion, Plaintiff does not allege that the federal government has revoked her passport or restricted her ability to travel; at most, she alleges a constitutional right to a replacement passport.  *Attachment 3, pg 7*.  However, that court correctly found that, assuming a protected interest exists, Plaintiff cannot demonstrate that she has been denied notice or the opportunity to be heard concerning her request, noting that she was:  (1) directed to submit the supplemental information as part of her application; (2) informed in writing that absent the supplemental information her application could not be processed; and (3) informed that if she failed to respond to the request for supplemental information, her application would be considered closed.  *Attachment 3, pg 7-8*.  In light of these undisputed facts, the court concluded that Plaintiff could not reasonably claim that she was not accorded proper notice.  *Attachment 3, pg 8*.

With regard to her equal protection claim, Plaintiff does not allege that she was treated differently from any similarly situated individuals.  She claims only that an unnamed individual was issued a replacement passport "without incident or delay."  *Compl at ¶ 33*.  The *Baltierra I* court correctly held that such statements are nothing more than "conclusory, anecdotal

statements" that to do not suggest "that she was treated differently than another similarly situated person." *Attachment 3, pg 8*.

**D.    Plaintiff's "DOES" Claims Must Fail**

Plaintiff also appears to seek to name "DOES 1-50" as defendants.  Although the use of fictitious names is sometimes allowed for privacy reasons, the general rule is that the complaint must name all the parties.  Fed. R. Civ. P. 10(a); Roe v. New York, 49 F.R.D. 279, 281-282 (S.D.N.Y. 1970); but cf., M.K. v. Tenet, 99 F. Supp.2d 12, 17-18 (D.D.C. 2000). No compelling privacy reason exists in this case and Plaintiff should have named all the parties in the complaint.

Even if the Court deems this suit to include individual officials, the suit should, nevertheless, be dismissed pursuant to Fed. R. Civ. P. 12(b).  Plaintiff must establish personal jurisdiction for the unnamed DOES.  Because the record in this action does not establish proper personal service upon any federal officials in their individual capacities, named or unnamed, any claim against them in their individual capacities is subject to dismissal.

No individual defendant has been properly put on notice of the claims being asserted in this action.  In similar circumstances, courts have dismissed complaints. See e.g., Breslin v. City and County of Philadelphia, 92 F.R.D. 764, 765 (E.D.Pa. 1981) (dismissing Doe defendants because of due process concerns).  There is no authority in the Federal Rules of Civil Procedure or any statute Plaintiff cites for joining fictitious "Doe" defendants under routine circumstances, and thus they should be dismissed.  See, e.g., Armstrong v. United States Bureau of Prisons, 976 F. Supp. 17, 23 (D.D.C. 1997).  Although leave to amend might be appropriate in other settings, no such leave should be granted in this case because, as demonstrated herein, the complaint's other fatal deficiencies cannot be cured.

10

**E.    Plaintiff's Denial of Replacement Passport Claim is Moot**

Mootness is a jurisdictional question, one which a federal court must resolve before assuming jurisdiction.  North Carolina v. Rice, 404 U.S. 244, 246 (1971).  The central question of all mootness issues is whether changes in the circumstances that prevailed at the beginning of litigation have forestalled any occasion for meaningful relief.  13A Wright, Miller & Cooper, Federal Practice and Procedure § 3533.3 (1984).  "If an event occurs while a case is pending on appeal that makes it impossible for the court to grant 'any effectual relief whatever' to a prevailing party, the appeal must be dismissed."  Beethoven.Com LLC v. Librarian of Congress, 394 F.3d 939, 950 (D.C. Cir. 2005) (citing Mills v. Green, 159 U.S. 651, 653 (1895)).  The issue of mootness depends upon whether the court can grant "any effectual relief."  Church of Scientology v. United States, 506 U.S. 9, 12 (1992).

As noted above, on April 27, 2007, the Agency issued the Plaintiff a United States replacement passport.  *Attachment 4*.  Assuming that the court determines that the Department of State's previous refusal not to issue a replacement passport was a denial of the passport application and a final administrative action and to the extent that this complaint challenges the refusal of the Department of State to issue a replacement passport under the APA, Plaintiff's claim should be dismissed because the Agency has now issued the Plaintiff the replacement passport that she seeks and that matter is now moot.

## CONCLUSION

For the above state reasons, this complaint must be dismissed.

11

Respectfully submitted,

_____/s/_____

JEFFREY A. TAYLOR, D.C. BAR # 498610
United States Attorney

_____/s/_____

RUDOLPH CONTRERAS, D.C. BAR # 434122
Assistant United States Attorney

_____/s/_____

QUAN K. LUONG
Special Assistant United States Attorney
555 Fourth Street, N.W., Room E-4417
Washington, D.C. 20530
(202) 514-9150 (telephone)
(202) 514-8780 (facsimile)

12

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on this 30th day of April, 2007, I caused service of the foregoing **DEFENDANTS' MOTION TO DISMISS** to be made on the *pro se* plaintiff via first class mail:

MARIA DE JESUS BALTIERRA
127 South Fairfax Street
Apartment 121
Alexandria, VA  22314

Respectfully submitted,

____/s/_____
QUAN K. LUONG
Special Assistant United States Attorney

# UNITED STATES DISTRICT COURT

# FOR THE EASTERN DISTRICT OF VIRGINIA

FILED

2006 DEC 11  P 4: 55

CLERK US DISTRICT COURT
ALEXANDRIA VIRGINIA

|  |  |
|---|---|
| MARÍA de Jesús BALTIERRA, M.D. | ) |
| **Plaintiff,** | ) |
|  | ) |
| vs. | ) |
|  | ) |
| **UNITED STATES DEPARTMENT OF STATE; AND DOES 1-50** | ) |
| **Defendant(s).** | ) |
|  | ) |

Civil Action No. 1:06-CV-1389 /cc/tcb

## COMPLAINT

María de Jesús Baltierra, M.D. (hereinafter "BALTIERRA") alleges causes of action against Defendant(s) as follows:

## FIRST CAUSE OF ACTION

### (Violation and Deprivation of Equal Protection Rights)

1.     Defendants: United States Department of State ("hereinafter "STATE DEPT."), its respective staff, agents, representatives and/or representatives of affiliate agencies, individually and in their official capacities, including staff and/or employees of the U.S. Passport Agency in Washington, D.C. Office; and DOES 1-50 have knowingly violated and deprived BALTIERRA of her constitutional equal protection rights guaranteed under the Fifth Amendment.

-1-

2.    BALTIERRA is ignorant of the true names and capacities of Defendants 1 through 50 inclusive, and therefore sues them by the foregoing fictitious names and is informed, believes and thereon alleges that each of said Defendants is responsible for the acts and conduct referred to herein. BALTIERRA reserves the right to amend this Complaint to name these Defendants once their identity becomes known.

3.    BALTIERRA is informed, believes and thereon alleges that each of the Defendants named herein, including DOES 1 through 50, are the staff, agents, representatives and/or representatives of affiliate agencies, individually and in their official capacities, acting jointly and severally, as such to be vicariously liable for the acts and conduct of each other.

4.    Defendant(s) have failed to issue a replacement U.S. Passport to BALTIERRA, a U.S. citizen, in violation of 22 U.S.C., Chapter 4, Section 211a – Authority to Grant, Issue and Verify Passports. Pursuant to 211a, "The Secretary of State may grant and issue passports, and cause passports to be granted, issued, and verified in foreign countries by diplomatic and consular officers of the United States."

5.    BALTIERRA became a naturalized citizen on or about November 8, 1968 in Los Angeles, California; Naturalization No. 9060364 – three is an additional though separate no. attached to it:    300151, as recorded by John Childers, Clerk of the District Court by S.C. Tony, Deputy Clerk.

6.    BALTIERRA, the eldest of seven children, was born in México City, México in 1950, and was thereafter raised and educated in Los Angeles, California from the age of four years.

7.    BALTIERRA applied for and was accepted to the University of California ("UCLA") in 1968.

8.    While at UCLA, BALTIERRA, distinguished herself academically and was honored by inclusion in the Dean's Honor List and the awarding of the *Rockefeller Scholarship* during her Freshman year (1968-69).

9.    BALTIERRA graduated from UCLA in 1972 with a degree in Spanish Literature.

10.    BALTIERRA applied for and was accepted to the UCLA Graduate School of Education in 1972, receiving her California K-12 Lifetime Teaching Credential in 1973.

11.    BALTIERRA gained acceptance at the University of Minnesota Medical School (hereinafter "U of M") and began her medical studies in 1974.

12.    BALTIERRA excelled in medical school, keeping an active agenda and remaining socially conscious.

13.    While in medical school, BALTIERRA was a member of the Board of Regents for the University of Minnesota and also sat and chaired numerous committees, including the Minority Admissions Committee.

14.    While at U of M, BALTIERRA and other *Chicana/o* and Native-

COMPLAINT
BALTIERRA v. UNITED STATES DEPARTMENT OF STATE, *et al.*

American students were subjected to deep-seeded hatred, scorn and ridicule from students and faculty because they were seen as intruders – taking away medical school slots from "qualified white" students.

15.    During orientation, the Dean of the medical school flatly stated: "Some of you do not belong in this medical school . . .," a reference to the Affirmative Action Program then in place.

16.    While at U of M, BALTIERRA distinguished herself again by earning ten (10) "Outstandings" in her medical school courses, despite having had to endure many severe financial setbacks.

17.    While in medical school, BALTIERRA chaired the Task Force on *Chicana/o* concerns, and also co-sponsored a Legislative Workshop on Capitol Hill dealing with minority issues in higher education.

18.    BALTIERRA's tireless community activism in support of the Hispanic population while in medical school earned her "Woman of the Year" recognition in the 1979 edition of the Minnesota Woman's Year Book, a U of M publication.

19.    BALTIERRA received her doctorate of medicine degree ("M.D.") from the U of M in 1981.

20.    On or about June 28, 2006 BALTIERRA applied in person at the Washington, D.C. Passport Agency, Special Issuance Department, for a replacement U.S. Passport.    She had a medical emergency in México that she

needed to attend to – a sick uncle.

21. The application was denied by the Passport Agency for pretextual reasons. The staff at the Passport Agency would only tell BALTIERRA that she would be required to complete a "Supplemental Information" form not required of other U.S. Citizens, which violated her privacy rights because it asked for private and confidential information about her and her immediate family. The line of questions is similar in form and fashion to questions asked of foreign nationals applying for U.S. citizenship.

22. The questions on the "Supplemental Information" form asked detailed questions about the names and addresses of all her siblings, the name and date of the church where she was baptized, and other such irrelevant questions that would never be asked of U.S. citizens.

23. BALTIERRA responded to the "Supplemental Information" questions via FedEx with copy to Congressman Jim Moran's office in Alexandria, Virginia on or about July 2006. BALTIERRA contacted Congressman Moran's office because she felt her efforts at resolving this matter on her own were futile because the Passport Agency staff/personnel were ignoring her inquiries. Congressman Moran's office served as a liaison in this matter over the summer.

24. The U.S. Passport Agency staff would neither acknowledge the completed "Supplemental Information" form nor respond to her inquires about the status of her application for the replacement U.S. Passport. BALTIERRA's

-5-

COMPLAINT
BALTIERRA v. UNITED STATES DEPARTMENT OF STATE, et al.

inquiries included a request to obtain copies of her passport record.

25.    Instead, the U.S. Passport Agency would only issue blanket statements that BALTIERRA had refused to cooperate and that they were still waiting for her supplemental responses.

26.    The Passport Agency did issue a brief statement by way of a notice sent to Congressman Moran's office dated June 30, 2006.  On page one of that unsigned letter the Passport Agency acknowledges that BALTIERRA had held U.S. Passports in the past and even cited her previous passport numbers.

27.    The unsigned letter attempts to rationalize the request for additional information on the pretext of alleged fraudulent use or disposition of the passports. They state:  "[W]e will require that you submit an additional signed and notarized statement concerning the disposition of the above listed passports.  You must state that you have not in anyway [sic] loaned or conveyed the above listed passports to anyone and that you will not attempt to travel on these passports if they are recovered."

28.    On Thursday, December 7, 2006, nearly six (6) months after having applied for her replacement passport in June 2006, and after six (6) months of foot dragging on the part of the U.S. Passport Agency, BALTIERRA applied for and, again, paid the requisite filing fee ($157) for expedited processing of her replacement U.S. Passport.  She was told by the U.S. Passport Agency staff to return the next day on Friday, December 8, 2006.

-6-

COMPLAINT
BALTIERRA v. UNITED STATES DEPARTMENT OF STATE, et al.

29.    When BALTIERRA returned the following afternoon she was again told her replacement passport would not be issued and that she would be required to complete a "Supplemental Information" form identical in all respects to the one previously submitted in July 2006. When BALTIERRA demanded to speak to the regional supervisor, a young woman appeared at the window accompanied by three (3) other unknown and un-identified staff/personnel.

30.    One of these individuals, after demanding his name and title numerous times, finally responded that he was from "Diplomatic Security," but would not give his name, despite repeated requests to identify himself.

31.    This un-identified individual from "Diplomatic Security" would only say that he had some questions of BALTIERRA because the "lost" U.S. Passport was still valid and that he was worried about it.

32.    When asked if he always questioned individuals applying for a replacement passport, he indicated in the affirmative.

33.    BALTIERRA knows for a fact that that blanket statement by this individual from "Diplomatic Security" was false and intentionally misleading because just the day before, on Thursday, she met an individual at the same passport office who was applying for a replacement passport because he had lost his previous passport (in fact, he had lost a total of about three passports over the years). He picked up his replacement passport without incident or delay.

34.    As a result of the above conspiratorial actions, and in conjunction

with the totality of actions against BALTIERRA by Defendant(s), BALTIERRA

has been deprived of her Fifth Amendment Equal Protection rights.


## SECOND CAUSE OF ACTION

### (Violation and Deprivation of Due Process Rights)

35.    Plaintiff incorporates by reference each and every allegation of

paragraphs 1 through 34 as though fully set forth herein.

36.    Defendants:    STATE    DEPT.,    its    respective    staff,    agents,

representatives and/or representatives of affiliate agencies, individually and in their

official capacities, including staff and/or employees of the U.S. Passport Agency in

Washington, D.C. Office; and DOES 1-50 have knowingly violated and deprived

BALTIERRA of her due process rights guaranteed under the Fourteenth

Amendment.

37.    The U.S. Passport Agency has access to all necessary information on

BALTIERRA to determine her identity.  Defendant has an overabundance of proof

to determine that BALTIERRA is a U.S. citizen.  This information is readily

available at the agency's fingertips.   As per the published passport policy

information    page    on    the    U.S.    Passport    Agency    website    at:

[http://www.travel.state.gov/passport/services/copies/copies/872_html],  "Passport

Services maintains United States passport records issued from 1925 to the present.

These records normally consist of applications for United States passports and

-8-

supporting evidence of United States citizenship, and can be obtain upon request."

38.    BALTIERRA maintains that her proof of citizenship is the fact that she has been issued previous U.S. Passports based on her original submission of citizenship proof.

39.    BALTIERRA has requested a copy of her passport record on more than one occasion, however, she has been repeatedly told by Passport Agency staff that the information is confidential and cannot be released.

40.    The U.S. Passport Agency alleges to have mailed BALTIERRA an interview date with the Department of Homeland Security, but BALTIERRA contends she has never received any such notice or request. In fact, BALTIERRA only learned about that alleged "interview request/notice" through Senator Warner's office – who became involved in the matter in November 2006. However, no record of that alleged "notice" has ever been produced.

41.    The U.S. Passport Agency alleges that BALTIERRA has requested too many replacement passports, and that on that basis it will no longer issue a replacement passport, yet there is no basis for the allegation that BALTIERRA has used any of her passports for any other reason than for her own personal use and international travel. In effect, BALTIERRA is being treated as a common criminal.

42.    BALTIERRA submitted all required information for issuance of a replacement passport.

-9-

COMPLAINT
BALTIERRA v. UNITED STATES DEPARTMENT OF STATE, et al.

43.    One of the requirements for a replacement passport to be issued is that the applicant complete form DS-64, entitled "Statement Regarding A Lost or Stolen Passport."

44.    For "Lost or Stolen Passports," the applicant is required to sign an affidavit attesting to the fact that the passport was indeed lost, and is further asked to describe the details if known. BALTIERRA completed and signed form DS-64 under oath when applying for her replacement passport in June 2006, and again on Thursday, December 7, 2006 when she applied anew for her replacement passport.

45.    Form DS-64 does not make reference to any limitation on the number of times a replacement passport may be requested or issued on account of "loss," nor does any such limitation exist.

46.    In addition to form DS-64 (affidavit attesting to loss of passport), BALTIERRA completed and signed under oath form DS-11, entitled "Application For A U.S. Passport."

47.    The requirements listed for U.S. Passport applicants, are: (1) Proof of U.S. Citizenship; (2) Proof of Identity; (3) Two recent color photographs; and (4) Fees [$157 for expedited service].

48.    Under "Proof of U.S. Citizenship," the Passport Agency will accept the following for naturalized citizens: (1) Submit a previous U.S. Passport; (2) Certificate of Naturalization; (3) Certificate of Citizenship; -or- (4) Report of Birth Abroad.

49.   BALTIERRA completed and signed under oath form DS-11, entitled "Application For A U.S. Passport," submitting with it a photocopy of her previous "lost" U.S. Passport, and two (2) valid state-issued identifications as proof of identify in support of the proof of citizenship requirement.

50.   The U.S. Passport Agency has at its disposal digitalized information – demographic, birth, citizenship records and photographs – at its disposal, as by its own admission on the passport policy information website page cited above.

51.   The U.S. Passport Agency is at a loss for providing a valid, compelling reason for its refusal to issue the replacement passport.

52.   BALTIERRA is informed, believes, and thereon alleges that Defendants are attempting to cloud BALTIERRA's citizenship status as pretext for an otherwise unlawful attempt to obtain private and confidential information on naturalized citizens for compilation into a secret Homeland Security databank similar to the illegal information gathering conspiracy uncovered this past summer.

53.   Since BALTIERRA is a naturalized U.S. citizen, she would fall into that class of individuals who would apply for U.S. Passports, and therefore subject to the Dept. of Homeland Security's unlawful intelligence gathering techniques.

54.   Defendants are aware and have sufficient proof that BALTIERRA is a U.S. citizen and that she is who she claims to be, yet they continue to refuse to issue her replacement passport on pretextual grounds.

55.   If Defendants have a substantive reason why the passport should not

-11-

be issued, they have not stated it nor cited an applicable law supporting their behavior and refusal to issue the replacement passport, and yet they refuse to acknowledge receipt of BALTIERRA's previously-submitted "Supplemental Information" form.

56.    The facts support the contention that BALTIERRA has been denied her right to a U.S. Passport without an adequate opportunity to be heard or to contest the as yet unknown legal basis for the denial, in violation of her due process rights.

57.    BALTIERRA has received no notice of hearing, and contends no such notice will issue so long as Defendant continues its fishing expedition on naturalized citizens seeking replacement passports.

58.    BALTIERRA is a U.S. citizen, and has been for 38 years, yet the U.S. Passport Agency, an arm of the STATE DEPT. continues to treat BALTIERRA as though she were a foreign national, an alien and/or illegal immigrant, and continues to trample on her due process rights guaranteed under the U.S. Constitution.

59.    As a result of the above conspiratorial actions, and in conjunction with the totality of actions against BALTIERRA by Defendant(s), BALTIERRA has been deprived of her Fourteenth Amendment due process rights.

## THIRD CAUSE OF ACTION

## (Interference with Property Interest in U.S. Passport)

60.    Plaintiff incorporates by reference each and every allegation of paragraphs 1 through 59 as though fully set forth herein.

61.    Defendants: STATE DEPT. and its respective staff, agents, representatives and/or representatives of affiliate agencies, individually and in their official capacities, including staff and/or employees of the U.S. Passport Agency in Washington, D.C. Office; and DOES 1-50 have knowingly violated and deprived BALTIERRA of her property interest in her U.S. Passport.

62.    BALTIERRA is informed, believes, and thereon alleges that Defendants have no intention of issuing the replacement passport without first obtaining, illegally through coercion and under duress with the pretext of verifying her citizenship status, confidential and private information for compilation into a secret Homeland Security national databank.

63.    BALTIERRA contends she is a U.S. citizen, and that the U.S. Passport Agency is refusing to issue the passport on pretextual grounds having no basis in law.

64.    BALTIERRA is entitled to the issuance of her replacement U.S. Passport as a matter of law – she has submitted the requisite fees and documentation (including two state-issued pieces of identification and a photocopy of her "lost" passport showing her image and passport number).

65.    The refusal to issue the replacement passport is not only creating

-13-

great hardship, but is in violation of BALTIERRA's constitutional rights.

66.    BALTIERRA has become a prisoner in her own country – unable to travel because the STATE DEPT. is refusing, illegally and without merit, to issue a replacement passport.

67.    BALTIERRA is entitled to a U.S. Passport, as is her right as a U.S. citizen.

68.    BALTIERRA is informed, believes, and thereon alleges that the STATE DEPT. will not issue her replacement passport unless ordered to do so by a court of law.

## FOURTH CAUSE OF ACTION

### (Declaratory Relief)

69.    Plaintiff incorporates by reference each and every allegation of paragraphs 1 through 68 inclusive of the as though set forth in full herein.

70.    BALTIERRA is entitled to declaratory relief to insure that her Constitutional rights are not further trampled on by Defendant(s).

71.    Defendants are not entitled to absolute immunity when they have knowingly and viciously acted in bad faith with intent to discredit and damage BALTIERRA's good name and reputation by denying her application for a replacement U.S. Passport, thus casting a cloud over her credibility and legal status in the United States, despite there being an overabundance of proof in the Passport

-14-

Agency's databanks to prove that BALTIERRA is who she says she is and that she is a U.S. citizen.

72.    That unless each and every Defendant, individually and in their official capacity, is held accountable for their negligent and unforeseen bad faith actions, they will continue to violate other naturalized citizens' constitutional rights and their right to obtain a U.S. Passport.

73.    Defendants, each and every one of them, through their past and present actions, continue to violate BALTIERRA's equal protection rights, due process rights.

74.    Defendants' activities and behavior constitutes an interference with BALTIERRA's property interest in her U.S. Passport.

75.    That in the process of unlawfully refusing to issue the replacement passport, Defendants, through their agents and legal advisors, have communicated confidential information about BALTIERRA to unauthorized third parties, since such information is not privileged if made in bad faith.

76.    BALTIERRA is entitled not only to full and immediate issuance of her replacement U.S. Passport, but also to have the record cleared and to have any and all defamatory information now contained within the U.S. Passport or other sister and/or affiliated agency databanks.

77.    BALTIERRA has committed no crime and has complied totally and completely with the requirements, and thus is entitled to the immediate issuance of

her replacement passport.

## FIFTH CAUSE OF ACTION

### (Damages)

78.    Plaintiff incorporates by reference each and every allegation of paragraphs 1 through 77 inclusive of the as though set forth in full herein.

79.    Defendants, each and every one of them, individually and in their official capacity, have taken it upon themselves to purposely, maliciously and arrogantly weave fictitious misrepresentations of fact into gospel and uncontested truth.

80.    BALTIERRA has twice paid the U.S. Passport expedited application fee and has twice been denied, without legal justification and without an opportunity for hearing or to rebut the allegations or reasons for not issuing the replacement passport.

81.    BALTIERRA, at the very least, is entitled to a full and complete refund of her two applications fees because the passport applications were maliciously flagged and negligently processed and/or processed with ill motives in an attempt to obtain confidential and private information under pretext of verifying her citizenship status.

82.    BALTIERRA has been suffered defamation through improper and unjustified allegations of wrongdoing, and has also suffered economic loss at

having to pay the replacement application fee that has not resulted in the proper disposition of her two passport applications.

83.    BALTIERRA had planned to travel to Europe with her elderly 81-year-old mother this month, but her efforts have been thwarted by Defendants' refusal to issue the replacement passport.   The travel arrangements and flight tickets have been made and paid for, and will be forfeited if not used.   The total amount of these monetary damages will be presented at trial.

**WHEREFORE**, Plaintiff prays for judgment against the Defendants, and each of them, as follows:

**ON PLAINTIFF'S FIRST CAUSE OF ACTION** (violation and deprivation of equal rights)

1.    General, compensatory and economic damages, according to proof at the time of trial;

2.    Punitive damages against Defendant for its flagrant, negligent and malicious failure to comply with state and federal equal rights protections;

3.    Costs of suit; and

4.    For such other and further relief as this Court deems just and proper.

**ON PLAINTIFF'S SECOND CAUSE OF ACTION** (violation and deprivation of due process rights)

1.    General, compensatory and economic damages, according to proof at the time of trial;

2.    Punitive damages against Defendant for its flagrant, negligent and malicious failure to comply with state and federal due process protections;

3.    Costs of suit; and

4.    For such other and further relief as this Court deems just and proper.

**ON PLAINTIFF'S THIRD CAUSE OF ACTION** (interference with property interest in U.S. Passport)

1.    **DECLARATORY RELIEF** in the form of a judicial determination that Defendants have violated BALTIERRA's equal protection and due process rights, as well as BALTIERRA's property interest in her U.S. Passport.  Such judicial determination is proper because of the nature of the constitutional rights violations and the failure of Defendant(s) to provide an opportunity to be heard.

2.    **ENJOIN** the STATE DEPT., through the U.S. Passport Agency, from continuing to demand, under color of law, that BALTIERRA divulge confidential and private information unrelated to her replacement passport application;

-18-

3.    **ORDER** the STATE DEPT., through the U.S. Passport Agency, to immediately issue the replacement U.S. Passport, as proof of U.S. citizenship is readily available and within their means to determine through highly detailed information contained within the U.S. Passport Agency databank files;

4.    **ORDER** the Defendants, through Subpoena *duces tecum*, to produce records of BALTIERRA's passport record, which will prove that she is a U.S. citizen and has previously been issued U.S. passports without incident;

5.    General, compensatory and economic damages, according to proof at the time of trial;

6.    Punitive damages against Defendant for its flagrant, negligent and malicious violation of Plaintiff's property interest in her U.S. Passport;

7.    Costs of suit; and

8.    For such other and further relief as this Court deems just and proper.

## ON PLAINTIFF'S FOURTH CAUSE OF ACTION (declaratory relief)

1.    **DECLARATORY RELIEF** in the form of a judicial determination that Defendants have violated BALTIERRA's equal protection and due process rights, as well as BALTIERRA's property interest in her U.S. Passport. Such judicial determination is proper because of the nature of the constitutional rights violations and the failure of Defendant(s) to provide an opportunity to be heard;

-19-

2.    **ENJOIN** the STATE DEPT., through the U.S. Passport Agency, from continuing to demand, under color of law, that BALTIERRA divulge confidential and private information unrelated to her replacement passport application;

3.    **ORDER** the STATE DEPT., through the U.S. Passport Agency, to immediately issue the replacement U.S. Passport, as proof of U.S. citizenship is readily available and within their means to determine through highly detailed information contained within the U.S. Passport Agency databank files;

4.    **ORDER** the Defendants, through Subpoena *duces tecum*, to produce records of BALTIERRA's passport record, which will prove that she is a U.S. citizen and has previously been issued U.S. passports without incident;

5.    General, compensatory and economic damages, according to proof at the time of trial;

6.    Punitive damages against Defendant for its flagrant, negligent and malicious violation of Plaintiff's right to obtain a replacement U.S. Passport.

7.    Costs of suit; and

8.    For such other and further relief as this Court deems just and proper.

**ON PLAINTIFF'S FIFTH CAUSE OF ACTION** (damages)

1.      General, compensatory and economic damages, according to proof at the time of trial;

2.      Punitive damages against Defendant for its flagrant, negligent and malicious violation of Plaintiff's right to obtain a replacement U.S. Passport;

3.      Costs of suit; and

4.      For such other and further relief as this Court deems just and proper.


Dated:      December 11, 2006

MARÍA de Jesús BALTIERRA, M.D.
Plaintiff, In *Propria persona*
127 S. Fairfax Street, #121
Alexandria, Virginia 22314
T: 202.531.3939
F: 703.782.0382

COMPLAINT
BALTIERRA v. UNITED STATES DEPARTMENT OF STATE, *et al.*

# VERIFICATION

I, MARÍA de Jesús BALTIERRA, M.D., am the Plaintiff in the above-entitled proceeding. I have read the foregoing Complaint and know the contents thereof. The same is true of my own knowledge, except as to those matters, which are stated upon information and/or belief, and as to those matters I believe them to be true.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge. Executed at Alexandria, Virginia on December 11, 2006.

Dated: _____December 11, 2006_____    _____

MARÍA de Jesús BALTIERRA, M.D.
Plaintiff, In *Propria persona*

For Emergency Re-Issuance of a still valid & certified US Passport for Dr. Maria Baltierra - whose the purpose of emergency travel - Application # 160148345. (See attached,

on Friday & Monday such as efforts from difference such Justices, law school faculty experts, constitutional law to review

As a U.S. citizen I have asked experts these Questions are excessive & vague such CERTIFICATION QUESTIONNAIRE.

certainly insulting & proof of abuse outside the limits of US Passport SIA SA/SD/SO.

— Maria de Jesús BALTIERRA, M.O.

— I decline to disclose my SS# because my SS# is not to be used for identification purposes.

June 9, 1952

YOUR DATE AND PLACE OF BIRTH:

YOUR DATE OF BAPTISM AND WHERE:  Irrelevant & discriminatory Question. Without waiving my rights as a U.S. citizen, I respectfully decline to answer this question because it is Violative of my constitutional rights.

AT WHAT AGE DID YOU STOP LIVING IN THE UNITED STATES?  I am a U.S. citizen and have NEVER relinquished my U.S. citizenship or stopped

AT WHAT AGE DID YOU RESUME LIVING IN THE UNITED STATES?  living in the U.S.

Irrelevant question → see above answer.

RELATIVES. COMPLETE ALL INFORMATION AS REQUESTED
PLEASE USE CONTINUATION SHEET IF NECESSARY

| FAMILY MEMBER | FIRST & LAST NAMES | DATE & PLACE OF BIRTH | TELEPHONE # |
|---|---|---|---|
| FATHER | | | |
| MOTHER | | | |
| SPOUSE CURRENT | | | |
| SPOUSE PREVIOUS | | | |
| SIBLINGS | | | |
| BROTHER (S) | | | |
| SISTER (S) | | | |

N/A  My parents & siblings are not applying for Passports. Without waiving my rights as a U.S. citizen, I respectfully decline to answer these questions because they are irrelevant and...

NOTE: IF THIS IS ON BEHALF OF A MINOR PASSPORT APPLICANT, ANSWER THE QUESTIONS AS IF YOU ARE THE APPLICANT SINCE YOU HAVE SIGNED THE APPLICATION.
COMPLETE AND RETURN TO: PPT SIA SA/SD/SO

I CERTIFY THAT ALL INFORMATION IS TRUE AND CORRECT

Submitted under PROTEST & Duress
SIGNATURE          TODAY'S DATE

YOUR NAME AND SOCIAL SECURITY NUMBER:

**EMPLOYMENT: COMPLETE ALL INFORMATION AS REQUESTED**
PLEASE USE CONTINUATION SHEET IF NECESSARY

| NAME(S) OF EMPLOYER | MONTHS/YRS THERE | SUPERVISOR'S NAME | CITY/STATE CODE | AREA CODE &PHONE # |
|---|---|---|---|---|
| CURRENT | | | | |
| PREVIOUS | | | | |
| PREVIOUS | | | | |
| PREVIOUS | | | | |
| PREVIOUS | | | | |

YOU ARE NOW FINISHED. PLEASE SUBMIT THREE OR MORE OF THE FOLLOWING DOCUMENTS (IF INDICATED-ONLY SUBMIT THOSE DOCUMENTS), WHICH HAVE NOT BEEN SUBMITTED PREVIOUSLY, I.E. SUCH AS A DRIVER'S LICENSE UNLESS INDICATED. ORIGINAL DOCUMENTS WILL BE RETURNED **IN MOST CASES**:

NOTE: TO BE ACCEPTABLE, **IDENTITY DOCUMENTS MUST HAVE BEEN CREATED (DATED) PRIOR TO THE DATE AN APPLICATION FOR PASSPORT WAS FILED AND PREFERABLY DATED SEVERAL YEARS PRIOR.**

1. PROFESSIONAL IDENTIFICATION CARD OR LICENSE.

2. EMPLOYEE IDENTIFICATION CARD (STATE, MUNICIPAL, PRIVATE)

3. STUDENT IDENTIFICATION CARD, TRANSCRIPTIONS, DIPLOMAS, YEARBOOKS (AS EARLY AS POSSIBLE)

4. DRIVER'S LICENSE OR DMV NON-DRIVERS ID CARD NOT PREVIOUSLY SUBMITTED. VEHICLE REGISTRATION AND/OR TITLE. NOTICE OF LICENSE SUSPENSION FROM DMV. DMV computer read-out of driving history showing residences for the past ten years.

5. MILITARY SERVICE, REGISTRATION, CLASSIFICATION DISCHARGE DOCUMENT.

6. 

7. HEALTH/INSURANCE DOCUMENTS

8. MARRIAGE CERTIFICATE/DIVORCE DECREE

9. BAPTISMAL CERTIFICATE/CERTIFIED BIRTH CERTIFICATE (IF NOT ALREADY SUBMITTED)

10. ATTENDING MIDWIFE'S REPORT AND POST-NATAL NOTES CREATED BY THE MIDWIFE AND/OR YOUR MOTHER DURING PREGNANCY AND DELIVERY (BABY BOOK)

11. EMPLOYMENT/TAX RECORDS showing residences for the past ten years

12. OTHERS: UNION MEMBERSHIP CARD.



There is no basis of any kind -- authority for this "questionable," quality/identifiability of this particular questionnaire requested/on record with the IRS -- one "red tape" and others who

**RESIDENCES: COMPLETE ALL INFORMATION AS REQUESTED:**
PLEASE USE CONTINUATION SHEET IF NECESSARY

HOUSE/APT /ADDRESS/PHONE #  OR COUNTRY IF NOT IN THE USA          YEARS THERE

AT BIRTH: _____

1. FROM: _____ TO _____

2. FROM: _____ TO _____

3. FROM: _____ TO _____

4. FROM: _____ TO _____

5. FROM: _____ TO _____

6. FROM: _____ TO _____

CURRENT _____

04-18-07    01:33pm    From-L/CA U.S. Department of State    202&470083    T-211    P.003    F-226

# IN THE UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF VIRGINIA

### Alexandria Division

María de Jesús Baltierra, M.D.,

    Plaintiff,

v.

United States Department of State, et al.,

    Defendants.

      )
      )
      )
      )    1:06cv1389 (JCC/TCB)
      )
      )
      )

### MEMORANDUM OPINION

Plaintiff María de Jesús Baltierra, proceeding pro se, filed this action challenging the United States Passport Agency's refusal to issue her a replacement United States passport pursuant to 22 U.S.C. § 211a, which concerns the Secretary of State's authority to issue passports. She seeks unspecified damages, as well as declaratory and injunctive relief. Dr. Baltierra also filed a Temporary Restraining Order, pursuant to Fed. R. Civ. P. 65(b), to compel the United States Department of State to issue her a new passport in time for her scheduled travel to the United Kingdom on December 13, 2006, as well as enjoin the Department of State from asking her certain questions she believes violates her "privacy rights." Dr. Baltierra seeks leave to proceed in forma pauperis, which will be granted for good cause shown in her application, namely her recent designation to proceed in forma pauperis in Baltierra v. Va. Bd. of Med., 1:06cv1233. See 28 U.S.C. § 1915(e). Section 1915(e)(2)(B), however, provides that a court "shall dismiss" an action filed in forma pauperis "at any time if the court determines that the action or appeal is (i) frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." For the reasons that follow, this complaint must be dismissed for failure to state a claim.

I.

Plaintiff, Dr. Baltierra, is a United States citizen who was naturalized on or about November 8, 1968.[1] The defendant is the United States Department of State, which is vested, through the Secretary of State, with the authority to grant and issue passports. On or about June 28, 2006, Dr. Baltierra applied for a replacement passport at the U.S. Passport Agency, Special Issuance Department in Washington, D.C. ("the Agency"). In response to her request, the Agency directed Dr. Baltierra to complete a form of "Supplemental Information," which she refused to complete, citing the irrelevancy of the questions.[2] On June 30, 2006, the Agency sent Dr. Baltierra a letter stating that she had "reported lost, stolen or mutilated several valid or potentially valid passports within the past 17 years . . . [including] Passport 016287219 issued September 22, 1999. This passport is valid until September 21, 2009 and was endorsed as the replacement for a passport already reported lost or stolen."[3] The letter further provides

> Please have the INDIVIDUAL, INSTALLATION, FEDERAL GOVERNMENT
> AGENCY OR BUSINESS ESTABLISHMENT last in possession of these passports
> submit a *detailed* notarized statement regarding the disposition of the passports noted
> above. A single word explanation of "lost" or "misplaced" is insufficient and will
> not be accepted as your detailed statement regarding these passports. (emphasis in
> original]

> Because Federal Law limits the number of passports that you can have in your
> possession without the express permission of the Department of State, we will

---

[1] The facts in this section are compiled from plaintiff's complaint and petition for a temporary restraining order.

[2] Dr. Baltierra returned the form to the Agency with her various objections and submitted a copy of her incomplete form with her petition for a temporary restraining order.

[3] It is unclear if the submitted single page is the entire letter as there is no signature line. Dr. Baltierra avers that the letter was unsigned but seems to suggest that the letter contains more information. Compl. 6 ("On page one of that unsigned letter the Passport Agency acknowledges that BALTIERRA had held U.S. Passports in the past and even cited her previous passport numbers.").

require that you submit an additional signed and notarized statement concerning the disposition of the above listed passports. You must state that you have not in anyway [sic] loaned or conveyed the above listed passports to anyone and that you will not attempt to travel on these passports if they are recovered. Please forward the additional statement to this office. If we do not hear from you within thirty (30) days, your application will be filed without action and you must submit a new application package. [emphasis added]

Dr. Baltierra does not state whether she took any action within the thirty day period or otherwise attempted to comply with the Agency's instructions.

On December 7, 2006, Dr. Baltierra submitted a new application to the Agency to obtain a replacement passport. On December 8, 2006, Dr. Baltierra spoke with unnamed representatives from the Agency who informed her that she could not get a replacement passport without submitting the "Supplemental Information" form she previously declined to complete. She spoke with an unidentified officer from "Diplomatic Security" who informed her that her most recent passport was still valid. The previous day Dr. Baltierra spoke with a private individual who obtained a replacement passport without having to answer all of the questions required of Dr. Baltierra.

Dr. Baltierra maintains that she submitted the standard paperwork for obtaining a replacement passport and believes her request for a replacement passport is subjected to extra scrutiny because she is a naturalized citizen. Moreover, she alleges that the Department of State seeks to cull her naturalization into question "as pretext for an otherwise unlawful attempt to obtain private and confidential information on naturalized citizens for compilation into a secret Homeland Security databank similar to the illegal information gathering conspiracy uncovered this past summer." Compl. 11. Furthermore, she believes the Agency's refusal to issue her a replacement passport, without notice or a hearing, violated her due process rights and right to travel outside of the country, thereby leaving her a "prisoner in her own country." Compl. 14.

Dr. Baltierra seeks damages from her economic losses and suffering, namely the two

application fees and expenses for her pending international trip that will be forfeited absent immediate issuance of a duplicate passport. She also seeks declaratory relief to declare as unconstitutional the Agency's "Supplemental Information" form and screening, and an injunction to compel the Department of State to issue her a replacement passport and to refrain for making further inquiries into her application.

## II.

District courts have a duty to construe pleadings by pro se litigants liberally, however, a pro se plaintiff must nevertheless allege a cause of action. Bracey v. Buchanan, 55 F. Supp. 2d 416, 421 (E.D. Va. 1999). Whether a complaint states a claim upon which relief can be granted is determined by "the familiar standard for a motion to dismiss under Fed. R. Civ. P. 12(b)(6)." Sumner v. Tucker, 9 F. Supp. 2d 641, 642 (E.D. Va. 1998). Thus, the alleged facts are presumed true, and the complaint should be dismissed only when "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." Hishon v. King & Spalding, 467 U.S. 69, 73 (1984).

## III.

Although Dr. Baltierra does not specify the jurisdictional basis for her claims, it appears she alleges 28 U.S.C. § 1331 federal question jurisdiction in claiming the defendants violated her federal due process and equal protection rights. She alleges constitutional torts against unnamed federal officers, which are construed as brought pursuant to Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971), which extends 42 U.S.C. § 1983 liability to

04-18-07    01:34pm    From-L/CA U.S. Department of State    2026470083    T-211    P.007/013    F-226

federal officials.[4] Her claims are subject to dismissal for the following reasons.[5]

### A.

The Department of State has a detailed administrative structure for challenging denials of passport applications, and plaintiffs must exhaust this administrative structure before seeking relief in federal court. Cf. Apfaker v. Sec'y of State, 378 U.S. 500, 504 (1964) (implying administrative exhaustion of passport application procedures need not be reviewed because the parties conceded exhaustion); Kraus v. Dulles, 235 F.2d 840, 841-42 (D.C. Cir. 1956) (allowing judicial review of passport determination). After denying an application the Department of State must notify the person of the adverse action, in writing, explaining the reasons for the denial and procedures of administrative review. 22 C.F.R. § 51.75. Decisions denying, revoking, restricting, or invalidating a passport are appealable to the Department of State Board of Review, 22 C.F.R. § 7.3(b), and all other passport decisions, such as the right to receive or use a passport, is entitled to review before a hearing officer, 22 C.F.R. § 51.81. At the hearing the individual may appear, offer a statement, and present witnesses and evidence. 22 C.F.R. § 51.85. Requests for review of adverse actions must be made within sixty days after receipt of notice, and these actions are considered final absent a request for review. 22 C.F.R. § 51.81. The hearing officer submits a report and recommendations to the Deputy Assistant Secretary for Passport Services, 22 C.F.R. § 51.83, who renders a decision subject to final review by the Board of Appellate Review of the State Department within sixty days of the Secretary's decision, 22 C.F.R. § 51.89. This final adverse administrative determination is

---

[4] 42 U.S.C. § 1983 is inapplicable to federal officers.

[5] Dr. Baltierra does not allege any basis for venue or personal jurisdiction in this district, and it appears that venue is more appropriate in the District of Columbia, where a substantial part of these events took place. See 28 U.S.C. § 1391(e). Given the interests of justice in reaching an expedient resolution of these claims on the merits, the Court declines to transfer the complaint to the appropriate district. See 28 U.S.C. §1404.

then subject to review in federal district court. See Agee v. Baker, 753 F. Supp. 373, 387 (D.D.C. 1990) (rejecting a due process challenge to adverse passport determination as not ripe when applicant did not first exhaust the available administrative remedies). Moreover, courts have rejected judicial challenges to adverse passport determinations when the lack or delay of final administrative action was "attributable to the neglect of the plaintiff to furnish the [Agency] with the additional evidence which he had requested," Ling Share Ye v. Acheson, 214 F.2d 4, 4 (3d Cir. 1954), or where the "plaintiff has not made a sincere or serious effort to comply with the regulations in effect," Tin Mew Lee v. Dulles, 155 F. Supp. 708, 710 (D. Haw. 1957).

Here, it is clear that Dr. Baltierra has not exhausted her administrative remedies. Even assuming the June 30, 2006 letter was an adverse administrative action,[6] Dr. Baltierra neither alleges nor avers that she took any action either to appeal the decision, as instructed in the letter, or to comply with the Agency's requests. If, as she contends, the Agency's request for the additional information was in error, Dr. Baltierra should have raised these concerns through the proscribed administrative channels, instead of delaying any official action until December 8, 2006—approximately one week before she needed a replacement passport for her international travel. This delay is strictly the result of Dr. Baltierra's negligence, and, as such, cannot create emergency situations to require this Court to disregard the required deference to the administrative process.

Similarly, Dr. Baltierra's refusal to comply with the Agency's request for additional information does not bode well for her current legal challenge. In response to the Agency's request for additional information because they had no record of a lost passport and had already issued three

_____

[6] In fact, the contrary appears correct as Dr. Baltierra provides no record and proffers no statement that the Agency ever rejected her application for a replacement passport.

04-18-07    01:34pm    From-L/CA U.S. Department of State    2026470083    T-211    P.008/013    F-226

replacement passports to Dr. Baltierra in the preceding seventeen years, Dr. Baltierra gave the Agency a form filed with her objections to answer the forms, noting the questions were "excessive" and "abusive" and her response was submitted "under protests & duress." Even if the Agency's request were unreasonable, which does not appear to be the case, Dr. Baltierra's response can hardly be viewed, even in a light most favorable to her, as "a sincere or serious effort to comply with the regulations in effect." Accordingly, she has not exhausted her administrative remedies and this complaint must be dismissed.

### B.

Even if the Agency had issued an adverse determination on Dr. Baltierra's application and Dr. Baltierra had exhausted her administrative remedies, her due process and equal protection claims still fail to state a claim. The Fifth Amendment provides, in part, that the federal government shall not allow any person to "be deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V.  To satisfy the "elementary and fundamental requirement[s] of due process," individuals are entitled to notice and an opportunity to be heard concerning any deprivation of life, liberty, or property. Mullane v. Cent. Hanover Bank & Trust Co., 339 U.S. 306, 314 (1950). It is undisputed that the federal government has neither denied nor revoked Dr. Baltierra's passport, nor otherwise restricted her ability to travel in and out of the country. At most, Dr. Baltierra alleges a constitutional right to a replacement United States passport. Assuming such a right exist, she has not demonstrated that the Agency denied her notice or the opportunity to be heard concerning her request for a replacement passport.  As provided in her complaint and submitted exhibits, the Department of State (1) directed Dr. Baltierra to submit additional information as part of her application for a replacement passport, (2) informed Dr. Baltierra in writing that absent this additional information it could not process her application, and (3) further informed Dr. Baltierra

04-18-07    01:34pm    From-L/CA U.S. Department of State    2026470083    T-211    P.010/013    F-226

that, if she did not respond to their written request, her application would be considered closed. Dr. Baltierra can not reasonably claim she was not accorded notice by the Department of State.[7] Thus, her due process claim must be rejected as meritless.

Concerning her equal protection claim that she was treated differently than other applicants for a replacement passport, Dr. Baltierra again fails to state a claim of relief. The due process clause of the Fifth Amendment protects against arbitrary classifications by federal actors. See U.S. Const. amend. V. In considering an equal protection claim, the standard for defining the equal protection guarantee is the same regardless of whether the claim is pursued under the Fifth or Fourteenth Amendment. See Int'l Sci. & Tech. Inst., Inc. v. Inacom Comm., Inc. 106 F.3d 1146, 1156 (4th Cir. 1997). Like the Fourteenth Amendment, the Fifth Amendment's due process clause provides for a guarantee of equal protection of the law that all people, similarly-situated, will be treated the same. See id.

Here, Dr. Baltierra does not allege that she was similarly situated to any other application or that she was treated differently than that person. At most, she claims an unidentified individual did not have to submit the same information she had to obtain a replacement passport. She does not state whether, like her, this individual had already requested several replacement passports and still had a valid passport on file. Moreover, Dr. Baltierra believes that naturalized citizens and natural born citizens are treated differently in the passport process, and she presents a claim of conspiratorial machinations by the federal government to compile information about naturalized citizens into an illegal government database. Without more, these conclusory, anecdotal statements does not suggest that she was treated differently than another similarly situated person.

---

[7] She also states that she received word of notice of an interview date with the Department of Homeland Security but took no additional action to secure a new interview date.

8

This claim will also be dismissed.[9]

## IV.

For all the above stated reasons, this complaint must be dismissed for failure to state a claim under 28 U.S.C. § 1915(e)(2)(B),[9] which precludes the entry of a temporary restraining order.[10] Nothing in this Order shall limit Dr. Baltierra from seeking administrative or judicial review of any denials of passport applications concerning her December 7, 2006 or any subsequent applications.

Finally, even though Dr. Baltierra is proceeding pro se and is entitled to certain leniencies concerning representing herself in this Court, the Court is better able to address her pleadings and motions when she adheres to the appropriate judicial rules and procedures.[11] Specifically, the Court must note that Dr. Baltierra filed this complaint at 4:55 p.m. on December 11, 2006, seeking an "emergency" hearing and placement on the calendar for December 11 or December 12 because her travel was scheduled for December 12, 2006. The Clerk's Office contacted Dr. Baltierra the morning of December 12, 2006 to inform her of a signing deficiency, discussed below, and stated that her case was under consideration and the Court would inform her if and when her request for

---

[8] Dr. Baltierra also makes much of the different information she received at the English-speaking counter and the Spanish speaking counter. She does not explain what the differences were between the information she received, whether the differences were of substance, how this fact is relevant to the issues in this case, or how she was injured by these differences.

[9] Because the complaint fails on the merits, the Court declines to consider the issue of sovereign immunity in a claim for damages from a federal agency. The federal government and its agencies are only liable for damages brought pursuant to the Federal Tort Claims Act, 28 U.S.C. § 1346(b).

[10] It is significant that, absent the inability to participate in, what appears to be, a family vacation, Dr. Baltierra never establishes a basis for finding irreparable harm if her preliminary injunction is denied. See Blackwelder Furniture Co. of Statesville, Inc. v. Selig Mfg. Co., 550 F.2d 189 (4th Cir. 1977).

[11] Because Dr. Baltierra is proceeding pro se, the Court disregarded her pleading deficiencies in considering the merits of her claims.

injunctive relief was granted. Not satisfied with this response, Dr. Baltierra and a third-party contacted the Clerk's Office, in person and over the telephone, approximately three more times during the day in a manner that can be characterized as persistent, at best, and vexatious harassment, at worst. With the one in-person contact, Dr. Baltierra delivered a note to the Court noting that "time is of the essence" and that she "waited all day today" for the hearing "necessary to prevent further harm" even though this so-called "harm" concerned inconveniencing familial travel plans. Although the Court recognizes that Dr. Baltierra has scheduled travel plans on December 13, these last minute and somewhat insufficient filings are solely of her doing.

The submitted pleadings were also problematic: the complaint provided little, if any, legal explanation or justification for granting relief over its 22 pages; the application to proceed <u>in forma pauperis</u> was incomplete and unresponsive to the questions; the petition for a temporary restraining order was unsigned pursuant to Fed. R. Civ. P. 11(a); and her notice of a hearing lacked a proposed time. These pleading deficiencies, coupled with plaintiff's aggressive tactics and request for an emergency hearing five minutes before the close of business, are unacceptable behavior and merely detract from speedy and proper consideration of her claims.

An appropriate Order shall issue.

Entered this ___13th___ day of December 2006.

_(signature)_

United States District Judge

Alexandria, Virginia

04-18-07    01:35pm    From-L/CA U.S. Department of State    2026470083    T-211    P.013/013    F-226

# IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF VIRGINIA

Alexandria Division

Mariá de Jesús Balcierra, M.D.,

    Plaintiff,

**v.**

United States Department of State, **et al.,**

    Defendants.

1:06cv1389 (JCC/TCB)

## O R D E R

For the reasons stated from the bench and in the accompanying Memorandum Opinion, it is hereby

ORDERED that plaintiff's motion to proceed in forma pauperis (Docket # 2) be granted for good cause shown; and it is further

ORDERED that the complaint be dismissed without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii). Plaintiff may pursue her claims in the appropriate court after first exhausting her administrative remedies; and it is further

ORDERED that plaintiff's motion for temporary restraining order (Docket # 3) and motion for placement on the calendar (Docket #4) be denied.

To appeal, plaintiff must file a written notice of appeal must be filed with the Clerk of this Court within sixty (60) days of the date of this Order. See Fed. R. App. P. 3 & 4.

The Clerk is directed to send a copy of this Order and the accompanying Memorandum Opinion to plaintiff and a courtesy copy of the complaint, this Order, and the accompanying Memorandum Opinion to the United States Attorney for the Eastern District of Virginia.

Entered this ___13___ day of December 2006.

United States District Judge

Alexandria, Virginia

FedEx | Ship-Manager | Label 7981 6275 3105

From: Odón D. JPVA (202)665-0200
Dept of State CA/PPT/SA
1111 19th Street NW
Suite-200
Washington, DC 20036

SHIP TO: (571)220-1957        BILL SENDER
maría de jesus baltierra

127 So. Fairfax St 121

Old Town Alexandria, VA 22314

Ship Date: 30APR07
ActWgt: 1 LB
System#: 2472312/NET28600
Account#: S *******

Delivery Address Bar Code

Ref # 0200
Invoice #
PO #
Dept #

STANDARD OVERNIGHT

TRK# 7981 6275 3105        FORM
0201

22.314        -VA-US

19 LVLA

IAD

TUE
Deliver By:
01MAY07
A1

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

_____
)
MARIA de Jesus BALTIERRA,                  )
                                           )
      Plaintiff                         )
                                           )
                                           ) Civil Action No. 06-2148 (RWR)
      v.                                 )
                                           )
U.S. DEPARTMENT OF STATE                   )
AND DOES 1-50                              )
                                           )
      Defendants.                        )
_____)

## <u>ORDER</u>

Upon consideration of Defendants' Motion to Dismiss, the relevant law, and the entire record herein, it is this _____ day of _____, 2007

ORDERED that Defendants' Motion to Dismiss is GRANTED, and it is further

Further ORDERED that this case is DISMISSED WITH PREJUDICE.

This is a final appealable order.

SO ORDERED.

_____
UNITED STATES DISTRICT COURT JUDGE